# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FRANKLIN C. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-046-TCK-FHM |
| | ) | |
| MONIQUE RENTIE; | ) | |
| JERRY BARLOW; | ) | |
| CHRIS STRAIGHT, | ) | |
| | ) | |
| | ) | |
| Defendants.[1] | ) | |

## OPINION AND ORDER

Plaintiff Franklin Smith commenced this action on January 18, 2018, by filing a pro se[2] civil rights complaint (Dkt. # 1) against three Tulsa County Sheriff's Office (TCSO) employees: Deputy Monique Rentie, Sergeant Chris Straight, and Sergeant Jerry Barlow (collectively, Defendants).[3] Before the Court is the Fed. Civ. P. Rule 12(b)(6) motion to dismiss the complaint (Dkt. # 33) filed by Rentie and Straight. By order filed January 8, 2019 (Dkt. # 47), the Court notified the parties it would convert the motion to dismiss to a motion for summary judgment and provided the parties time to submit any additional materials relevant to the motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.

---

[1] In his complaint, Smith identified Defendant Jerry Barlow only as "Sgt. Barlow." Dkt. # 1, at 1. More recently, Smith submitted a notice to effect service on Barlow, further identifying him as Jerry Barlow. Dkt. # 53, at 1. The Clerk of Court is directed to update the record to reflect Barlow's full name.

[2] Because Smith appears pro se, the Court liberally construes his filings. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). But the rule of liberal construction neither requires nor permits the Court to act as Smith's advocate. *See id.*

[3] According to Smith, Barlow is no longer employed by the TCSO. Dkt. # 53 at 1.

1997). In that same order, the Court directed Smith to show cause why Barlow should not be dismissed based on Smith's failure to effect timely service. Dkt. # 47, at 8; *see* Fed. R. Civ. P. 4(m).

In response to the Court's order, Smith filed a response in opposition to the motion for summary judgment (Dkt. # 49); a notice to effect service on Barlow (Dkt. # 53), along with a new USM-285 Marshal service form; and an "addendum" to his response to the summary judgment motion (Dkt. # 54).[4] Rentie and Straight filed a one-sentence reply "re-urg[ing] their pending Motion to Dismiss" (Dkt. # 52).[5] For the reasons that follow, the Court (1) dismisses the complaint without prejudice as to Counts II and III for lack of jurisdiction, (2) grants summary judgment in favor of Defendants as to Count I on the basis of qualified immunity, (3) denies as moot Smith's

---

[4] After he filed his response, Smith also filed a a "notice to court" (Dkt. # 51) that consists of a letter and copy of his response.

[5] Defendants did not submit any affidavits in response to the Court's notice that it would treat the motion to dismiss as a motion for summary judgment. However, they previously submitted a special report detailing the TCSO's investigation of the incident (Dkt. # 30), Plaintiff's medical records (Dkt. # 31) and a DVD exhibit (Dkt. # 32). *See Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (permitting consideration of investigative reports compiled by prison officials). For purposes of summary judgment, the Court will treat Smith's verified complaint and the special report as affidavits. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence."); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("[A] verified complaint may be treated as an affidavit or purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56[(c)(4)]."). In addition, the Court will consider factual allegations in Smith's response and the incident report attached thereto (Dkt. # 49, at 12-14). *Cf. Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (suggesting "it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they [are] consistent with the facts and theories advanced in the complaint"); *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1235 n.8 (D. Kan. 2016) (finding it appropriate to consider facts alleged in pro se response to motion to dismiss where they "merely amplify" and "do not supplant or contradict" the allegations in the complaint).

2

request to serve Barlow, and (4) denies as futile and untimely Smith's requests for leave to amend the complaint to add new claims and a new defendant.

## BACKGROUND

When Smith filed his civil rights complaint, he was incarcerated in the Virginia Beach City Jail in Virginia Beach, Virginia. *Id.* at 5. Smith alleges, however, that his civil rights were violated while he was incarcerated at the David L. Moss Criminal Justice Center in Tulsa, Oklahoma, which serves as the Tulsa County Jail (hereafter, the Jail). Dkt. # 1, at 1-4.

In Count I, Smith claims that Defendants knew he had been threatened by another inmate but failed to protect him from being assaulted by that inmate on January 13, 2016. *Id.* at 3-4. In support of this claim, Smith alleges that around 1:30 p.m. that day he notified his pod officer, Deputy Rentie, "that inmate Patrick Wayne Thomas broke into [Smith's] cell by altering the locking device and stoled [sic] his commissary." *Id.* at 3. Smith also told Rentie, "You got to do something theres [sic] going to be a riot." *Id.* Smith alleges Rentie contacted Barlow and Straight "regarding [Smith] being threatened by an inmate" but Barlow and Straight "disregarded the risk of serious danger to [Smith]," and Rentie "started reading her novel, and said, 'Theres [sic] nothing I can do.'" *Id.*

According to Smith, Defendants left their shift around 4:00 p.m. "without taking reasonable care to secure [his] safety." *Id.* at 2. Smith alleges that around 5:30 p.m., on January 13, 2016, Thomas punched him in the face, and Smith fell to the floor. *Id.* at 4. According to Smith, he was "knocked unconscious," and he "suffer[ed] a fractured cheekbone and irreparable tissue damage." *Id.* at 2-4.

In Counts II and III, Smith claims that the TCSO "creates an unreasonable risk of harm" to inmates, particularly "older and disabled" inmates, and exposes them to "a constant threat of

3

violence and assaults" because it has no policy relating to stolen commissary items. *Id.* at 3-4. He appears to allege the lack of any such policy caused or contributed to the assault he describes in Count I. *Id.* In addition, he alleges that (1) Sergeant Black "moved Patrick Thomas to our pod J-12 after he was caught stealing commissary from another pod instead of placing him in solitary confinement, (2) Thomas was placed in solitary confinement only after he assaulted Smith, and (3) after the assault, Barlow and Straight told Smith they were not responsible for his stolen commissary items or for the assault. *Id.* at 4.

In his request for relief, Smith seeks $100 million in compensatory damages, an additional $100 million in punitive damages, injunctive relief in the form of an order directing the TCSO to "implement a policy to prevent commissary theft and injuries in the future," and "whatever else the Court deems appropriate." *Id.* at 4.

As directed by the Court, the TCSO investigated the alleged assault and submitted a special report (Dkt. # 30). That report reflects that the TCSO has a policy defining theft of personal items as a "Major Infraction" and providing that an inmate who commits theft may be administratively disciplined or criminally charged. Dkt. # 30, at 2; *see also* Dkt. # 30-3, at 6-8 (TCSO Policy 90-3).

The special report reflects that Smith was incarcerated at the Jail on the date of the alleged assault, Dkt. # 30-1, but the TCSO found "no record" of Smith informing Deputy Rentie, on January 13, 2016, that he had been threatened by another inmate. Dkt. # 30, at 3. Smith did, however, submit a grievance request through the Jail's kiosk system, on January 19, 2016, complaining about the theft of his commissary items and the alleged assault. *Id.*; Dkt. # 30-4, at 2. In that request, Smith described the stolen items and stated that he told Rentie about the theft and warned her that "something real bad is going to happen." Dkt. # 30-4, at 2. Smith further stated:

4

> [Rentie] picked up the phone and said that she was calling someone now to take care of the uprising . . . , But it is not clear if [Rentie] called [Straight]. If so, [Straight] never responded to the uprising. If not, then [Rentie] left her shift knowing that I could get seriously hurt trying to obtain my commissary . . . , Because [Rentie] locked me down earlier to secure my safety but left knowing that I was a target of theft and threats of abuse by other inmates . . ./ The inmate who had stolen my commissary was the same inmate who had struck me, fracturing my cheek bone, knocking me unconscious and injurying [sic] my right alble [sic] too., Which could of been avoided if [Rentie] would of followed the jail[']s policies, and procedures by contacting her superiors, instead of being so rapped [sic] up in her novel.

Dkt. # 30-4, at 2 (altered to omit full capitalization). The next day, Smith submitted a kiosk request stating, "I believe J12 is [Barlow's] zone so I don[']t know if [Rentie] notified him or if he was working that day?" *Id.* On January 21, 2016, Barlow responded to Smith's kiosk requests as follows: "It is not the responsibility of the pod officer to ensure your property is secured, that is your responsibility. If your door was unsecured and someone got into your room, then the loss of your property is your fault." *Id.*

With the special report, the TCSO submitted employee time records reflecting that, on January 13, 2016, Straight left work at 4:15 p.m., and Rentie left work at 4:00 p.m. Dkt. # 30-5, at 1-2.

A jail incident report reflects that Patrick Wayne Thomas assaulted Smith in the day room of the J12 pod around 5:50 p.m. on January 13, 2016. Dkt. # 30-6, at 1-2. Both inmates were cited for "fighting." *Id.* at 1. According to the report, Detention Officer Vann saw Smith fall to the floor and saw that his face was "bloody," but did not see who hit Smith. *Id.* at 2. Vann saw Thomas arguing with a third inmate and saw Thomas pick up a dinner tray. *Id.* Smith and Thomas were both escorted from the day room. *Id.* Smith was taken to the medical unit, and Thomas was re-housed in the J11 pod. *Id.* Deputy Beck immediately investigated the assault and filed a criminal report.

5

Dkt. # 30-7. The criminal report reflects that Smith told Beck that Thomas accused Smith of stealing commissary items "then blind sided Smith and punched him on the right side of his face causing bleeding and swelling." *Id.* at 2. Thomas told Beck he punched Smith in the face one time with a closed fist because Smith accused Thomas of stealing commissary items.[6] *Id.* Beck's criminal report reflects that Smith was taken to the emergency room a the OSU medical center where he was diagnosed with a fractured orbital bone. *Id.*

The special report states that after emergency room staff cleared Smith to return to the Jail he was re-housed in the medical unit. Dkt. # 30, at 3. Smith's medical records reflect that he was interviewed by a nurse at 8:38 p.m. on January 13, 2016. Dkt. # 31, at 10. At that time, his facial fracture was treated with an ice pack and pain medication. *Id.* The nurse described Smith as "calm" and "cooperative," and observed that he had a black eye. *Id.* at 11. Smith was relocated to general population on January 14, 2016. *Id.* When he returned for a medical visit on January 18, 2016, a member of the medical staff observed that he had a black eye and a swollen elbow, but his vital signs were within normal limits. *Id.* at 11-12. During that visit, Smith primarily complained of elbow pain and reported occasional dizziness. *Id.* at 12.

---

[6] The TCSO submitted a DVD recording of surveillance video that purportedly captured the alleged assault. Dkt. # 32. Citing the video clips, Smith takes issue with the TCSO's statement in the special report that he and Thomas were in a "fight." Dkt. # 49, at 8, 10; Dkt. # 54, at 1, 5-6. He asserts that defense counsel and Sergeant Black committed "fraud upon the court" by "alter[ing] the investigation to dispute that "he was a victim of a vicious assault." *Id.*; *see also* Dkt. # 54, at 1 (asserting that video "clearly show[s] Plaintiff Smith's 'hands down' trying to lean away from his attacker"). Due to technical issues, the Court was unable to view the video clips on the DVD. Nonetheless, as further discussed below, even without surveillance video, the Court finds the record, particularly Deputy Beck's criminal report, supports Smith's allegation that Thomas assaulted him. Thus, the TCSO's characterization of the assault as a "fight" has not influenced this Court's decision.

According to the TCSO's special report, the Tulsa County District Attorney's Office filed criminal charges against Thomas in Tulsa County District Court Case No. CM-2016-0265, but the charges were later dismissed at the State's request. Dkt. # 30, at 3.

In response to the Court's notice that it would treat the motion to dismiss as a motion for summary judgment, Smith alleged the following additional facts to support Count I: (1) Smith"was threatened by a prisoner in front of Rentie about 1:00 or 1:30 p.m., (2) Rentie took no action because Smith is a "well known jailhouse litigator," (3) as Smith told Rentie about the theft of his commissary items at 1:30 p.m., "an inmate screamed out: 'I'm missing my commissary, I'll kill a m*****f***** if I catch him." Dkt. # 49, at 3; Dkt. # 54, at 3. Defendants made no effort to controvert these facts in their reply. Dkt. # 52.

## DISCUSSION

**A.      Smith's claims for injunctive relief are moot**

Smith alleges, in Counts II and III of his complaint, that the TCSO's failure to adopt a policy for stolen commissary items "causes a constant threat of violence and assaults" and "creates an unreasonable risk of harm" to inmates, particularly "older and disabled" inmates, in violation of the Eighth Amendment. Dkt. # 1, at 3-4.[7] As relief for this alleged constitutional violation, Smith seeks injunctive relief in the form of an order directing the TCSO to "implement a policy to prevent commissary theft and injuries in the future." *Id.* at 4.

---

[7] Applying the rule of liberal construction, the Court construes the complaint as attempting to impose liability against Tulsa County for the claims alleged Counts II and III by suing Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

7

The record reflects that the TCSO does, in fact, have a policy regarding theft of personal items. Dkt. # 30, at 2; Dkt. # 30-3, at 6-8. But even if the Court generously construes Smith's claims as alleging that the TCSO's failure to enforce that policy contributed to the assault alleged in Count I, Smith's claims for prospective injunctive relief are moot because he is no longer housed in the Jail. *See Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) ("Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (emphasis and bracket in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974))); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that claims for injunctive relief are moot when the prisoner is no longer subject to the complained-of conditions of confinement).

Because the claims for injunctive relief alleged in Counts II and III are moot, this Court lacks jurisdiction to consider them. *Jordan*, 654 F.3d at 1023. Consequently, the Court dismisses the complaint, without prejudice, as to Counts II and III for lack of jurisdiction. *See Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) (noting that "a dismissal for lack of jurisdiction is not an adjudication of the merits" and "must be without prejudice").

**B.      Defendants are entitled to summary judgment as to Count I.**

In Count I, Smith alleges Defendants knew he faced a "substantial risk" of being assaulted by another inmate on January 13, 2016, but took no actions to protect him from being assaulted, thereby violating the Eighth and Fourteenth Amendments. Dkt. # 1, at 1-4.[8]

---

[8] The Court construes Count I as asserting a claim against each defendant in his or her personal capacity. *See Graham*, 473 U.S. at 165 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").

Defendants Rentie and Straight moved to dismiss the complaint, asserting Smith failed to sufficiently plead any plausible claims against them and, alternatively, that they are "qualifiedly immune from suit." Dkt. # 33. In response to this Court's notice that it would convert the Rule 12(b)(6) motion to a motion for summary judgment, Rentie and Straight filed a cursory reply re-urging their motion to dismiss.[9] Dkt. # 52.

Liberally construing the complaint, and accepting Smith's allegations as true, the Court finds the complaint sufficient to state a plausible Eighth Amendment claim against each defendant for failing to protect him from being assaulted by Thomas. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Prison officials are obligated, under the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a plausible failure-to-protect claim, a plaintiff must allege facts demonstrating (1) that he faced "an objective 'substantial risk of serious harm,'" (2) "that prison officials had subjective knowledge of the risk of harm," and (3) that the prison officials "who

---

[9] The Court acknowledges that Smith has not served Barlow with a summons and copy of the complaint and, as a result, Barlow neither entered an appearance in this case nor joined in the motion to dismiss which the Court is adjudicating as a summary judgment motion. As previously stated, Smith requests a second attempt to serve Barlow. Dkt. # 53. However, as further discussed in this section of the opinion, Smith's claim against Barlow is tenuous at best and, under the facts of this case, necessarily rises or falls with his claims against Rentie and Straight. In any event, because Smith appears in forma pauperis, this Court is obligated to dismiss the complaint "at any time" if it either fails to state a claim upon which relief may be granted or seeks monetary damages from a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B). In addition, the Court may, *sua sponte*, grant summary judgment to a nonmoving defendant under Fed. R. Civ. P. 56(f)(1). *See, e.g., Scull v. New Mexico*, 236 F.3d 588, 600-01 (10th Cir. 2000) (finding no error when district court granted summary judgment to moving defendants and, in same order, granted summary judgment *sua sponte* to nonmoving newly-added defendants).

9

'actually knew of a substantial risk to inmate health or safety'" failed to "respond[] reasonably to [the] known risk." *Howard v. Waide*, 534 F.3d 1227, 1236, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 833, 844-45). Here, Smith alleges in his complaint that he told Rentie that Thomas stole his commissary items, that he had been threatened by an another inmate, that Rentie informed Straight and Barlow of the theft and the threat, that none of the Defendants took any steps to protect him, and that he was later assaulted by Thomas. These allegations, though sparse, are sufficient to withstand Defendants' Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678.

But Smith must do more to survive a motion for summary judgment, particularly in light of the Defendants' assertion of qualified immunity. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). And, in applying the summary-judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)). However,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

Consistent with the plain language of Rule 56(a), the movant bears the ultimate burden to show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring). Nonetheless, when a defendant asserts that he or she is entitled to qualified immunity, the plaintiff bears an initial burden to show (1) that the defendant committed a constitutional violation and (2) that "clearly established law" would have given defendant fair notice that his actions or omissions would violate the constitutional right at issue. *Id.* at 1325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The movant bears the traditional summary-judgment burden only if the plaintiff satisfies this initial two-part burden. *Id.* at 1326.

Generally, in determining whether a plaintiff has satisfied this two-part burden, a court should "adopt" the plaintiff's "version of the facts." *Id.* at 1325 (quoting *Scott*, 550 U.S. at 380). But, at the summary-judgment stage, a "plaintiff's version of the facts must find support in the record." *Id.* And the court may reject plaintiff's version of the facts if it is "'so utterly discredited by the record that no reasonable jury could have believed' it." *Id.* (quoting *Scott*, 550 U.S. at 380). The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), "and may resolve the question by finding either requirement is not met," *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011).

Adopting Smith's version of the facts, to the extent those facts are supported by the record, the Court finds that Smith has not met his burden to show an Eighth Amendment violation. As discussed, the record reflects that Smith told Rentie (1) that Thomas stole commissary items from his jail cell, (2) that he had been threatened by an inmate, and (3) that there would be a "riot." Dkt.

# 1, at 1, 3. In addition, the record reflects that as Smith was talking to Rentie, an inmate walked by and "screamed out" that he would "kill" the inmate who stole his commissary items. Dkt. # 49, at 3. Finally, the record reflects that Thomas assaulted Smith after both men traded accusations about the theft of commissary items. Dkt. # 30-6, at 1-2; Dkt. # 30-7, at 2.

These facts, even if true, and even if arguably sufficient to support that Smith faced an objective risk of harm, do not support Smith's claim that any of the defendants had actual knowledge that Smith faced a substantial risk of serious harm. *See Howard*, 534 F.3d at 1243 (reiterating "that *Farmer* requires evidence of *actual knowledge* on the part of prison officials"). Under Smith's version of the facts, Rentie knew that Smith was the victim of a theft, knew that an unidentified inmate threatened Smith in an unspecified manner, and heard another (or possibly the same) inmate threaten to harm the person who stole commissary items. These facts do not show that Rentie had actual knowledge that Smith faced a substantial risk of being assaulted by another inmate. Thus, Rentie is entitled to summary judgment on the basis of qualified immunity.

Smith's failure-to-protect claim against Straight and Barlow is even more tenuous. Given the lack of evidentiary support demonstrating that Rentie had subjective knowledge that Smith faced a substantial risk of harm, there is even less evidence to support that Straight and Barlow had the requisite knowledge. Significantly, while Smith alleges in his complaint that Rentie picked up the phone and contacted Straight and Rentie, the grievance request Smith submitted through the Jail's kiosk system several days after the assault discredits his version of the facts on this point. In that request, Smith stated (1) Rentie "picked up the phone and said she was calling someone," (2) it was "not clear" if Rentie called Straight, and (3) the assault could have been avoided if Rentie "would of followed the jail's policies and procedures by contacting her superiors." Dkt. # 30-4, at 2. The

12

next day, he submitted a kiosk request stating that he did not "know if" Rentie notified Barlow "or if [Barlow] was working" on the day of the assault. *Id.* Thus, the record does not support Smith's claims that Straight and Barlow had actual knowledge, from Rentie or any other source that Smith faced a substantial risk of being assaulted by another inmate on January 13, 2016. The Court therefore finds that Straight and Barlow are also entitled to summary judgment on the basis of qualified immunity. Because the Court finds that Barlow is entitled to summary judgment, the Court denies as moot Smith's request to make a second attempt to serve Barlow.

**C.     Leave to amend the complaint and add a new defendant**

In his response and "addendum," Smith appears to allege additional claims that are not identified in the complaint and seeks to add a new defendant. Dkt. ## 49, 54. Liberally construing his filings, Smith appears to allege four new claims:

(1) the "City" and/or the TCSO exposed itself to "municipal liability" because it was "impermissibly unconstitutional" for the TCSO to house mentally ill inmates in general population, Dkt. # 49, at 1-2, 4-5, 7-8; Dkt. # 54, at 2-3 (municipal-liability claim);

(2) the TCSO failed to adequately train Defendants to identify mental illness and the risks faced by mentally ill inmates, Dkt. # 49, at 1, 7 (failure-to-train claim);

(3) Barlow and Straight "allowed or took covert steps to take several of [Smith's] commissary items, including his radio while he was at the Psychiatric Hospital (OFC) from (November 3rd 2015) to (December 18th 2015)" in violation of the Due Process Clause, *id.* at 3 (due-process claim); and

(4) Sergeant Black, Defendants, and Defendants' former counsel, Meredith Baker, committed "fraud on the court" by altering the TCSO's internal investigation of his failure-to-protect claim to reflect that he and Thomas were "in a fight" when, in fact, he was the victim of an assault, *id.* at 10; Dkt. # 54, at 1, 5 (fraud claim).

Smith further alleges that Black intentionally placed Thomas in the same pod as Smith so Thomas could continue stealing commissary items, thereby creating the risk that Thomas would assault Smith. Dkt. # 1, at 4; Dkt. # 49, at 10; Dkt. # 54, at 2. Based on this allegation, and presumably with respect to the fraud claim, Smith seeks to add Black as a defendant. Dkt. # 49, at 10. Given Smith's pro se status, and out of an abundance of caution, the Court will consider Smith's pleadings as also requesting leave to amend the complaint to add the four "claims" described above. *See* Fed. R. Civ. P. 15(a); *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) ("An issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to [Rule] 15.").

Under Rule 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Rule 15(a)'s purpose "is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)); *see also Pater*, 646 F.3d at 1299 ("As a general rule, a plaintiff should not be prevented from pursuing a claim merely because the claim did not appear in the initial complaint."). Thus, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Minter*, 451 F.3d at 1204 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "However, a court properly denies leave where 'a late shift in the thrust of the case will [ ] prejudice the other party in maintaining his defense upon the merits.'" *Pater*, 646 F.3d at 1299 (alteration in original) (quoting *Evans v.*

*McDonald's Corp.*, 963 F.2d 1087, 1090-91 (10th Cir. 1991)); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (noting that "untimeliness alone is a sufficient reason to deny leave to amend . . . especially when the party filing the motion has no adequate explanation for the delay").

For four reasons, the Court denies Smith's requests to add new claims and to add Black as a defendant. First, it would be futile to allow Smith to add the municipal-liability claim and the failure-to-train claim because, like the claims in Counts II and III, those claims are moot given that Smith is no longer incarcerated in the Jail. *See Jordan*, 654 F.3d at 1024. Second, it would be futile to permit Smith to add the due-process claim because Smith alleges a deprivation of property that occurred more than two years before he filed the instant complaint. Thus, his due-process claim would be time-barred. *See Lawson v. Okmulgee Cty. Criminal Justice Auth.*, 726 F. App'x 685, 690 (10th Cir. 2018) (unpublished)[10] (noting that, under Oklahoma law, two-year statute of limitations applies to 28 U.S.C. §1983 claims). Third, Smith's request to add Black as a defendant is untimely. Smith commenced this action in January 2018, and alleged in Count III of the complaint that Black "moved Patrick Thomas to our pod-J12 after he was caught stealing commissary from another pod instead of placing him in solitary confinement." Dkt. # 1, at 4. It is apparent from the complaint that Smith believed Black had some involvement in either failing to protect him from an assault or failing to enforce TCSO policies which, in Smith's view, contributed to the assault. Yet, Smith offers no adequate explanation for his delay in seeking to add Black as a defendant. Fourth, and finally, it would be futile to allow Smith to bring a fraud claim based on his belief that Defendants, Black, or

---

[10] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Defendants' former counsel altered the TCSO's investigation by characterizing the assault as a fight. Smith cites Fed. R. Civ. P. 60(b)(3) as the basis for asserting "fraud upon the court." Dkt. # 49, at 10; Dkt. # 54, at 1. Under Rule 60(b)(3), a "court may relieve a party ... from a final judgment, order or proceeding" due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." A motion made under subsection (b)(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Disregarding the lack of finality in the instant summary judgment proceeding, it would be futile to permit Smith to add a fraud claim because, as previously discussed, the record reflects that Smith was assaulted and the TCSO's mischaracterization has no bearing on the Court's summary judgment ruling. *See supra* n.6 (discussing Smith's allegation of "fraud upon the court"); *Orient Mineral Co. v. Bank of China*, 416 F. App'x 721, 725 (10th Cir. 2011) (unpublished) ("To establish fraud on the court, one must prove that 'the impartial functions of the court have been directly corrupted.'" (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc))).

For these reasons, the Court denies Smith's explicit request to add Black as a new defendant and his implicit requests to amend the complaint to add new claims.

## CONCLUSION

Because Smith is no longer incarcerated at the David L. Moss Criminal Justice Center, the claims he alleges in Counts II and III are moot. The Court therefore dismisses the complaint, without prejudice, as to Counts II and III for lack of jurisdiction. Construing the motion to dismiss (Dkt. # 33) as a motion for summary judgment, the Court finds that Smith fails to demonstrate that Defendants' conduct in this case violated the Eighth Amendment and concludes that Defendants

Rentie, Straight and Barlow are each entitled to summary judgment on Count I on the basis of qualified immunity. As a result of the Court's decision to *sua sponte* grant summary judgment in favor of Barlow, the Court denies as moot Smith's request for a second attempt to serve him. Finally, because Smith's requests to amend the complaint add new claims and add a new defendant are either untimely or futile, the Court denies those requests.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The complaint (Dkt. # 1) is **dismissed without prejudice** as to Counts II and III.

2. The motion to dismiss filed by Defendants Rentie and Straight (Dkt. # 33), construed as a motion for summary judgment, is **granted** as to Count I on the basis of qualified immunity.

3. The Court *sua sponte* **grants** summary judgment in favor of Defendant Barlow as to Count I on the basis of qualified immunity.

4. Smith's request to serve Barlow is **denied as moot**.

5. Smith's requests to amend the complaint to add new claims and to add Sergeant Black as a defendant are **denied**.

6. A separate judgment shall be entered in this matter.

**DATED** this 19th day of March 2019.

**TERENCE KERN**
**United States District Judge**